## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MICHELLE L. ANDERSON, | |
| Plaintiff, | |
| vs. | Civ. Action No. _____ |
| CITY OF ATLANTA, GEORGIA, and WELLINGTON CLARKE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Michelle L. Anderson ("Plaintiff" or "Anderson"), by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants City of Atlanta, Georgia, and Wellington Clarke (*collectively*, "Defendants").  Following an investigation into Anderson's allegations of severe and pervasive sexual harassment, Defendant City of Atlanta confirmed, on July 30, 2021, that Defendant Clarke subjected Anderson to sexually inappropriate conduct and that Defendant Clarke's actions were "unbecoming and unacceptable as a supervisor."  Nevertheless, Defendant City of Atlanta, Georgia, refused to remedy the damages suffered by Anderson, who respectfully shows the Court as follows:

## JURISDICTION AND VENUE

1.

Anderson commences the above-captioned case pursuant to:  (a) Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, for gender/sex discrimination and retaliation; (b) 42 U.S.C. § 1983 ("Section 1983") for gender/sex discrimination in violation of, *inter alia*, the Fourteenth Amendment (equal protection and due process) and for retaliation in violation of, *inter alia*, the First Amendment to the United States Constitution; and (c) the laws of the State of Georgia for assault, battery, and negligent supervision and retention.

2.

This Court has original jurisdiction over Anderson's Title VII and Section 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Anderson's State law claims, which arise from the same nucleus of operative facts as the Federal claims, pursuant to 28 U.S.C. § 1367.

3.

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) because Defendant City of Atlanta, Georgia, resides and maintains a place of business in the Northern District of Georgia, Atlanta Division.

4.

Anderson satisfied all applicable administrative prerequisites to institute this action. Specifically, Anderson timely filed a Charge of Discrimination, alleging gender/sex discrimination and retaliation, with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2021-04199).   Anderson timely commenced the above-captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated November 18, 2021.

5.

Likewise, Anderson satisfied the *ante litem* notice requirements pursuant to O.C.G.A. § 36-33-5.  On or about August 24, 2021, Anderson submitted an *ante litem* notice and Claim for Damages Form to the Defendant City of Atlanta.  The City of Atlanta Department of Law stated, on or about September 21, 2021, that the claims were being investigated and that a report to the Council will be rendered. Again, Defendant City of Atlanta has failed to address or remedy the admitted wrongful conduct endured by Anderson.

## PARTIES

6.

Anderson is an African-American female, citizen of the United States, and resident of the State of Georgia.  Anderson is subject to this Court's jurisdiction and entitled to bring an action of this nature and type.  At all times relevant to this action, Anderson was an "employee" of Defendant City of Atlanta, Georgia, within the meaning of, *inter alia*, Title VII and Georgia law.

7.

Defendant City of Atlanta, Georgia, ("Atlanta") is a municipal corporation, which maintains and operates the Atlanta Police Department ("APD") (Atlanta's law enforcement agency/department), incorporated under the laws of the State of Georgia.  Atlanta is an "employer" within the meaning of, *inter alia*, Title VII, engaging in an industry affecting inter-state commerce and employing more than fifty (50) employees for each working day in each of twenty (20) or more calendar weeks in the current and preceding calendar.  Likewise, Atlanta is a "person" under Section 1983.  Atlanta is headquartered, and may be served with process at, at the Atlanta Department of Law Atlanta City Hall located at 55 Trinity Avenue, SW, Suite 5000, Atlanta, Georgia 30303.

8.

Defendant Wellington Clarke ("Clarke")—African-American male—is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.  At all relevant times, Clarke served as Supervisor and/or Senior Inspector in the APD's Crime Prevention Unit ("Unit") responsible for, (a) hiring and terminating employees, (b) determining the schedules and assignments for employees, (c) supervising employees, and (d) otherwise controlling operation of the Unit.  Clarke acted, at all relevant times, under color of State law pursuant to the policies and customs of Atlanta and the APD. Clarke is a "person" under Section 1983.  Clarke may be served with process at the APD located at 226 Peachtree Street, SW, Atlanta, Georgia 30303.

## STATEMENT OF FACTS

9.

Atlanta supervises, manages, and operates, *inter alia*, the APD (Atlanta's law enforcement agency/department), including, but not limited to, the Unit.

10.

Anderson is a fifty-two (52) year old African-American female.

11.

In 2009, Anderson graduated from Clayton State University ("CSU") with a BA in Communications with a Minor in Psychology and, currently, Anderson is enrolled at Capella University, where Anderson is pursuing a Master's Degree in Counseling.

12.

After graduating from CSU, Anderson acquired extensive professional experience, including, but not limited to, serving as a Registrar with Piedmont Fayette Hospital, Office Manager with Shifa Medical Center, Financial Counselor with AGA, LLC, and Loss Draft Specialist with Focus of Georgia.

13.

In addition to extensive education and professional experience, Anderson possesses an assortment of professional certifications and licenses. Anderson is a certified nursing assistant. Moreover, Anderson possesses management, leadership, and customer service certificates.

14.

In or about May 2019, Anderson began working, under the supervision of Clarke, for Atlanta as a Crime Prevention Inspector with the APD.

15.

While employed as a Crime Scene Inspector with the APD, Anderson diligently performed all tasks while meeting or exceeding all performance expectations.  For example, Anderson was evaluated as dependable and efficient.  Consequently, Anderson was recognized for other positions of growth.

16.

Immediately upon the commencement of Anderson's employment at the APD, Clarke began sexually harassing Anderson and subjecting Anderson to unwelcome sexual advances and comments on a daily, continual, and regular basis.  For example, beginning in or about December 2020, Clarke began making comments like, "I like the way you looked in those blue jeans."  Whenever Clarke made such statements, Anderson rejected the comment/advance and responded in a manner like, "Cut it out, you have a wife and children – why are you talking like this?"

17.

Likewise, Clarke made inappropriate, uncomfortable, and unprofessional sexual comments about other women in the presence of Anderson.  For example, while Clarke and Anderson rode together while performing professional duties beginning in or about January 2021, Clarke made comments about other women,

such as, "Look at that behind," "Look at those breasts," and "Ooooh, weee, look at this."   Again, Anderson would respond, "Aren't you married with children?"  However, Clarke continued to make inappropriate sexual comments about other women in Anderson's presence.

18.

Over time, Clarke escalated the inappropriate and unwelcome sexual advances and comments.  For example, whenever Anderson was in the APD parking lot, Clarke invaded Anderson's personal space while making comments like, "Oh my god, you look good" and "What's different about you?"  Although Anderson generally responded, "Hold up, you're too close, get back" or "You're standing too close to me," Clarke was undeterred.  Even when there was no professional reason, on almost a daily basis, Clarke approached Anderson, invaded her personal space, and asked "How are you?"

19.

Disturbingly, Clarke also invaded Anderson's personal life when repeatedly calling Anderson's personal cell phone.  Although Clarke began the conversations with work-related topics, Clarke quickly diverted the conversation to personal, sexual conversions.  Often, Clarke stated, "I'm here if you never need to talk about anything"—inviting Anderson to engage in inappropriate sexual conversations.

20.

Undeterred, Clarke further escalated the unwelcome sexual advances and comments. For example, in or about February 2021, Clarke approached Anderson as she prepared to drive the community and asked, "How was your weekend," and declared, "I think about you all the time." Because Clarke had a lusty look in his eyes, Anderson simply responded, "Whatcha doing that for," before driving off.

21.

Unphased, Clarke continued making explicit sexual comments and physical contact in March 2021. For example, while Clarke and Anderson were in a training class, Clarke stood next to Anderson before asking, "Do you have something to eat?"—suggesting the desire to engage in sexual activities. Subsequently, Clarke walked down an aisle where Anderson was located and caressed Anderson's shoulder. When Anderson jumped back in a startled manner, Clarke declared, "You're so scary." Respectfully, Anderson responded, "You need to not be touching me. Why did you have to come near me and touch me?" Nevertheless, Clarke later spitefully and angrily rubbed her shoulder again in an intimidating manner. When Anderson attempted to traverse back to the precinct before Clarke had an opportunity to harass her again (Anderson often sought to avoid Clarke), Clarke drove up to Anderson and blew his horn in an aggressive manner.

22.

Faced with the unyielded and unrelenting sexual advances, comments, and offers, Anderson eventually summoned the courage to complain about the unwelcome sexual advances to APD leadership.  On or about March 26, 2021, Anderson reported Clarke's sexual harassment to the other Supervisor and Senior Inspector in the Unit, Margarita McMurray ("McMurray").  Surprisingly, McMurray disclosed that Clarke has sexually harassed other female officers and that, rather than discipline or take any remedial action, the APD simply moved Clarke to the Unit. Likewise, Anderson complained about Clark's unwelcome sexual advances, comments, and offers to Anderson's Lieutenant.  Despite knowledge of Clarke's prior sexual harassment, the APD assigned Anderson to Clarke, required Anderson to work closely with Clarke, and subjected Anderson to the known threat of sexual harassment.

23.

Subsequently, Anderson filed a complaint, alleging sexual harassment at the hands of Clarke, with Atlanta's Department of Human Resources ("HR"). Remarkably, the APD responded that it would take "years" to investigate Anderson's claims.  Meanwhile, Atlanta took no remedial action based upon Anderson's complaints and Clarke's know history of sexual harassment.

24.

Based upon Atlanta's failure to take any remedial action, on April 14, 2021, Anderson filed, with the EEOC, a Charge of Discrimination, complaining about sexual harassment and retaliation in violation of Title VII.

25.

Rather than take immediate remedial action based upon Anderson's complaints about sexual harassment, assaults, and batteries, Defendants subjected Anderson to a retaliatory campaign.  For example, although Anderson requested a transfer to another Department to escape Clarke's ongoing sexual harassment, assaults, and batters, Atlanta refused to protect Anderson.  Rather, Defendants merely transferred Anderson to Zone 1, where Clarke continued to follow and harass Anderson despite the fact that Clarke was not supposed to leave Zone 3. Moreover, once Anderson's complaints became known in the APD, officers began to approach Anderson and make negative comments about Anderson and the complaints.  Like the complaints from other female officers subjected to Clarke's sexual harassment, Defendants refused to take any remedial action.

26.

However, for the sake of appearances beginning in April 2021, HR conducted an investigation, interviewing Clarke and other employees with relevant information.

27.

Following the complaint and resulting transfer, Anderson became very uncomfortable and stressed.  Although Anderson became increasingly quiet and isolated from APD employees, Anderson's complaint became known throughout APD and, thus, Anderson was subjected to daily public ridicule and scrutiny from co-workers and supervisors.  Faced with the intolerable hostile work environment, unwelcome sexual comments and advances, public humiliation, and months of inaction by Atlanta that stated it would take "years" to investigate Anderson's claims, Anderson was constructively discharged and forced to resign from the APD on or about June 10, 2021.

28.

Prior to the constructive termination and/or forced resignation and despite being sexually harassed, assaulted, battered, and subjected to other unlawful conduct, Anderson diligently performed professional duties with the APD.

29.

Defendants' conduct caused Anderson to feel anxious, dejected, humiliated, violated, victimized, traumatized, and disrespected.

30.

At all relevant times, Defendants had actual and constructive notice and knowledge of the repeated, ongoing, and constant sexual harassment, assaults, and batteries directed to Anderson at the APD, however, Defendants failed to take any remedial action to address Anderson's complaints and concerns, but rather, continued to subject Anderson to unwelcome sexual advances and comments, assaults, and batteries while simply ignoring Anderson's complaints.

31.

Having forced Anderson to resign and constructively discharged Anderson, on July 30, 2021, HR confirmed that Clarke "subjected [Anderson] to sexually inappropriate conduct in violation of the city's sexual harassment policy . . . ." Although concluding that Clarke's "actions were unbecoming and unacceptable as a supervisor," like the prior complaints of sexual harassment involving Clarke, Atlanta closed the investigation and simply stated the intent to "follow-up with him regarding appropriate disciplinary action."

32.

The highest Atlanta official(s) with responsibility to protect Anderson against sexual harassment, assault, and battery had actual or constructive knowledge of Clarke's unlawful conduct forming the basis of the above-captioned complaint, as well as Clarke's similar unlawful conduct targeting other Atlanta employees.

33.

Despite such active and/or constructive knowledge, Atlanta's officials failed to take reasonable, prompt remedial action as required by Atlanta's sexual harassment policy and Federal laws protecting Anderson's right to be free from Clarke's sexual harassment, instead, Atlanta's officials constructively discharged and/or forced Anderson to resign.

34.

Clarke, along with other Atlanta/APD officials who knew about Clarke's unlawful sexual harassment and failures to stop/prevent said conduct, acted under color of State law when committing their unlawful acts or omissions forming the basis of the above-captioned complaint because said conduct was perpetuated utilizing the power and authority of their positions as Atlanta/APD officials.

35.

At all relevant times, it was clearly established law that subjecting an employee to sexual harassment or a sexually hostile work environment based upon gender and taking adverse employment actions against a subordinate/employee because the employee rejects and/or complains about unwelcome sexual advances or comments violated, *inter alia*, the First and Fourteenth Amendments to the U.S. Constitution.

36.

Clarke engaged in the unlawful conduct alleged herein intentionally, willfully, and maliciously with respect to Anderson and her Federally protected rights and, alternatively, Clarke engaged in the unlawful conduct alleged herein with reckless disregard for Anderson and her Federally protected rights.

## <u>CLAIMS FOR RELIEF</u>

### <u>COUNT I</u><br><u>SEXUAL HARASSMENT</u><br><u>HOSTILE WORK ENVIRONMENT</u><br><u>IN VIOLATION OF TITLE VII</u><br>(Against Atlanta)

37.

Title VII prohibits employers from discriminating against an employee based upon sex/gender, including sexual harassment in the form of unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature with the purpose or effect of unreasonably interfering with an employee's performance or creating an intimidating, hostile, and/or offensive work environment.

38.

Defendants violated Title VII, such that a cause of action exists where discrimination on the basis of gender/sex was the causative agent of adverse actions directed at Anderson by Defendants.

39.

Anderson, as a fifty-two (52) year old African-American female, is a member of a protected group under Title VII.

40.

From on or about May 2019 until June 2021, an employer-employee relationship existed between Anderson and Atlanta, such that Anderson was an "employee" and Atlanta was an "employer" within the meaning Title VII.

41.

At all times relevant to this action, Atlanta acted by and through its agents and employees, including, but not limited to, Clarke, each of whom acted in the course and scope of their employment with and for Atlanta.

42.

While employed by Atlanta, Anderson was forced to endure, because of her gender/sex, a hostile work environment, sexual assault, and sexual battery, where Anderson was subjected to adverse employment action(s) while forced to endure inflammatory remarks, harassment, intimidation, humiliation without any legitimate basis, as well as constant unwelcome sexual comments and advances without any legitimate basis.

43.

During the course of Anderson's employment, Clarke repeatedly subjected Anderson (and other female employees) to unwelcome sexual comments and advances, including, but not limited to, repeatedly making sexual comments

concerning Anderson's physical appearance, making explicit sexual comments about other women's physical appearance in Anderson's presence, sexually invading Anderson's personal space in an inappropriate manner, calling Anderson's cell phone for the purpose of engaging in sexual conversations, expressing sexual advances and desire for Anderson, physically caressing Anderson in a sexual manner, as well as making other unwelcome sexual advances and comments towards Anderson.

44.

The almost daily unwelcome sexual comments and advances by Clarke towards Anderson were severe and pervasive, materially affecting the terms and conditions of Anderson's employment.

45.

When Anderson refused to comply and reported the constant, unwelcome sexual comments and advances, Clarke aggressively escalated the sexual harassment, assaults, and batteries while Defendants subjected Anderson to tangible employment actions, including, but not limited to, constructive termination of employment and/or forced resignation from employment.

46.

The discrimination to which Anderson was subjected to by Defendants was based upon gender/sex in violation of Title VII and, thus, Anderson is entitled to all appropriate relief provided under the law.

47.

Defendants' actions constituted discrimination and disparate, adverse treatment based upon gender/sex such that the intentional actions by Defendants adversely impacted Anderson's terms, conditions, and privileges of employment.

48.

Defendants' actions created a hostile work environment based upon gender/sex such that the intentional actions by Defendants adversely impacted Anderson's terms, conditions, and privileges of employment.

49.

Defendants' discriminatory conduct was accomplished pursuant to an unofficial policy, practice, and/or custom of Defendants.

50.

As a direct and proximate result of Defendants' intentional and unlawful conduct, which was intended to cause Anderson harm and/or was committed with reckless disregard of the harm caused to Anderson, in derogation of Anderson's

Federally-protected rights, Anderson suffered and continue to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to their reputation, and other pecuniary loses.

51.

Defendants' intentional and illegal conduct entitles Anderson to compensatory damages, as well as any and all other remedies available under Title VII.

52.

Defendants' actions with regard to Anderson demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care and, therefore, Anderson is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT II:
## RETALIATION
## IN VIOLATION OF TITLE VII
### (Against Atlanta)

53.

Title VII prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercise or attempt to exercise rights under, Title VII.

54.

Anderson, as a fifty-two (52) year old African-American female, is a member of a protected group under Title VII.

55.

During the relevant period, the relationship between Anderson and Atlanta was an employer-employee relationship within the meaning of Title VII, such that a cause of action exists where retaliation on the basis of opposing and/or reporting discrimination, as well as participating in an investigation, is alleged to be the causative agent of adverse employment action(s) directed to Anderson by Defendants.

56.

During the course of Anderson's employment, Defendants unlawfully and knowingly discriminated against Anderson based upon, among other things, gender/sex in violation of, *inter alia*, Title VII.

57.

Anderson repeatedly complained to McMurray and HR about unlawful employment practices based upon gender/sex and sexual harassment in violation of Title VII.

58.

Immediately following Anderson's complaints concerning, among other things, unlawful employment practices and sexual harassment, Defendants transferred Anderson to a different Zone, subjected Anderson to professional ridicule and scrutiny, continued to expose Anderson to Clarke, denied Anderson's request for a transfer, constructively discharged Anderson, and/or forced Anderson to resign from Atlanta in violation of, *inter alia*, Title VII.

59.

The effect of Defendants' actions has been to suspend and deprive Anderson of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Anderson because of the exercise of Anderson's Federally-protected rights.

60.

Defendants' adverse employment action(s) against Anderson constitute unlawful retaliation against Anderson in violation of, *inter alia*, Title VII.

61.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Anderson harm and/or were committed with reckless and wanton disregard of the harm causes to Anderson in derogation of Anderson's Federally-protected rights.

62.

Defendants' discriminatory and retaliatory actions were undertaken in bad-faith.

63.

The retaliation to which Anderson was subjected by Defendants entitles Anderson to all appropriate relief afforded under the law.

64.

As a result of Defendants' intentional and unlawful actions, Anderson has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to her reputation, other indignities, as well as past and future pecuniary losses.

65.

Defendants' actions with respect to Anderson have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Anderson is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT III
## SEXUAL HARASSMENT
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF SECTION 1983
**(Against Atlanta and Clarke)**

66.

The Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution prohibit discrimination against public employees, such as Anderson, on the basis of gender/sex.

67.

As an African-America female, Anderson is in a protected group.

68.

Clarke and Atlanta are "persons" under Section 1983.

69.

At all relevant times, the relationship between Anderson and Atlanta was a relationship of "employee" to "employer" such that a cause of action exists where discrimination on the basis of gender/sex (sexual harassment) is alleged to be the cause of an adverse action directed to the employee by the employer.

70.

At all relevant times, Atlanta acted by and through its agents and employees, including, but not limited to, Clarke, each of whom acted in the course and scope of their employment with and for Atlanta.

71.

Defendants, acting under color of State and Local law, used their authority over Anderson to carry out illegal sex/gender discrimination (sexual harassment and hostile work environment) against Anderson:   repeatedly making sexual comments concerning Anderson's physical appearance, making explicit sexual comments about other women's physical appearance in Anderson's presence, sexually invading Anderson's personal space in an inappropriate manner, calling Anderson's cell phone for the purpose of engaging in sexual conversations, expressing sexual advances and desire for Anderson, physically caressing Anderson in a sexual manner, making other unwelcome sexual advances and comments towards Anderson, as well as constructively discharging Anderson and/or forcing Anderson to resign.

72.

Similarly, Clarke's actions constitute unlawful gender/sex discrimination (sexual harassment) in violation of Title VII and Atlanta's policies.

73.

Furthermore, Defendants' illegal sexual harassment against Anderson resulted from the customs and/or policies of Atlanta:  Atlanta violated Anderson's right to equal protection and due process by failing to take reasonable preventative, corrective, and/or remedial action with respect to Clarke's sexual harassment and hostile work environment despite complaints from Anderson and other female employees.

74.

Defendants' conduct constitutes unlawful sexual harassment culminating in the ultimate employment against Anderson, based upon gender, in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to United States Constitution.

75.

Defendants undertook the unlawful conduct alleged herein while acting under color of State and Local law.

76.

Defendants' conduct violated the clearly established law discussed herein.

77.

Defendants maliciously, recklessly, willfully, and wantonly disregarded Anderson's statutory rights and Defendants' discrimination was undertaken in bad faith.

78.

As a proximate and direct result of Defendants' discriminatory conduct, Anderson has suffered and continues to suffer damages including, but not limited to, emotional distress, inconveniences, loss of income and benefits associated with employment and other potential promotional positions, humiliation, and other indignities, for which Anderson is entitled to recover.

## COUNT IV
## RETALIATION
## IN VIOLATION OF SECTION 1983
### (Against Atlanta and Clarke)

79.

The First Amendment to the U.S. Constitution prohibits public employers from retaliating against an employee engaged in protected speech.

80.

Clarke and Atlanta are "persons" under Section 1983.

81.

Defendants undertook the unlawful conduct alleged herein while acting under color of State and Local law.

82.

Defendants' conduct violated the clearly established law discussed herein.

83.

During the relevant period, the relationship between Anderson and Atlanta was an employer-employee relationship within the meaning of the First Amendment, such that a cause of action exists where retaliation on the basis of protected speech is alleged to be the causative agent of adverse employment actions directed to Anderson by Defendants.

84.

During the course of Anderson employment, Defendants unlawfully and knowingly discriminated against Anderson based upon, among other things, gender/sex in violation of, *inter alia*, Title VII, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution.

85.

Anderson complained to Atlanta employees and submitted complaints about unlawful employment practices based upon sex/gender with respect to Anderson and other Atlanta employees, which is a matter of public concern.

86.

Anderson also submitted a Charge of Discrimination, opposing unlawful employment practices based upon, among other things, Anderson's gender/sex, which is also a matter of public concern.

87.

Anderson's interest in complaining about unlawful employment practices substantially outweighs any purported interest in efficient public service.

88.

Following Anderson's complaints and Charge of Discrimination concerning, among other things, unlawful employment practices based upon gender/race, Defendants took adverse employment actions against Anderson, including, but not limited to, transferring Anderson, subjecting Anderson to professional ridicule, scrutiny, and harassment, denied Anderson's request for a transfer, constructive discharge, forced resignation, and other adverse employment actions in violation of, *inter alia*, Title VII and Section 1983.

89.

Anderson's complaints about unlawful employment practices played a substantial part in the previously described adverse employment actions against Anderson.

90.

In the absence of the complaints about unlawful employment practices, Anderson would not have been subjected to the previously described adverse employment actions.

91.

The effect of Defendants' actions has been to suspend and deprive Anderson of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Anderson because of the exercise of Anderson Federally-protected rights.

92.

Defendants' adverse employment actions against Anderson constitute unlawful retaliation against Anderson in violation of, *inter alia*, the First Amendment to the U.S. Constitution.

93.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Anderson harm and/or were committed with reckless and wanton disregard of the harm causes to Anderson in derogation of Anderson's Federally-protected rights.

94.

Defendants' discriminatory and retaliatory actions were undertaken in bad-faith.

95.

The retaliation to which Anderson was subjected by Defendants entitles Anderson to all appropriate relief afforded under the law.

96.

As a result of Defendants' intentional and unlawful actions, Anderson has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to her reputation, other indignities, as well as past and future pecuniary losses.

97.

Defendants' actions with respect to Anderson have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Anderson is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNTS V AND VI:
## ASSAULT AND BATTERY
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against Atlanta and Clarke)

98.

Georgia law prohibits, among other things, intentional conduct causing physical harm to another person.

99.

Additionally, Georgia law prohibits, among other things, attempted batteries and/or conduct that places another person in reasonable apprehension of an immediate violent injury.

100.

At all relevant times, Clarke and Anderson were employed by Atlanta.

101.

During the course of employment, Anderson was required to work under the instruction and direct supervision of Clarke, who had a known history of sexual harassment, assault, and battery, with the APD.

102.

Despite Anderson's repeated objections, opposition, reports, and complaints, Clarke repeatedly made unwelcome sexual comments and advances, unwelcome/unprivileged sexual contact, as well as threatening incursions into Anderson's persona space as alleged herein, directed toward Anderson.

103.

Repeated physical/sexual assaults, which were willful, intentional, and directed towards Anderson by Clarke for reasons personal to those individuals, proceeded from anger, rudeness, and/or lust.

104.

When Anderson refused to comply with, and reported, the constant, unwelcome sexual comments and advances, Defendants began to subject Anderson to retaliatory adverse employment actions.

105.

Although Anderson (and others) repeatedly complained to Defendants' management concerning the unwelcome sexual advances and remarks from Clarke, as well as threatening conduct, Defendants failed to take any remedial action.

106.

As a direct result of the repeated offensive comments, sexist remarks, forceful physical contact and assaults, as well as increasingly aggressive sexual actions by Clarke, Anderson reasonably apprehended a violent injury and/or battery.

107.

All apparent circumstances, reasonably viewed, were such as to lead a person to reasonably apprehend a violent injury and/or battery from the unlawful conduct of Clarke.

108.

Clarke was not privileged, authorized, or justified when repeatedly touching and threatening Anderson in a sexual manner.

109.

When repeatedly assaulting and battering Anderson, Clarke was performing within the scope of their employment with Atlanta.

110.

Based upon the Atlanta's actions and/or Atlanta's customs and/or policies, Anderson suffered injuries related to Clarke's sexual harassment, assaults, and batteries.

111.

As the direct and proximate result of Defendants' intentional, willful, unlawful, and tortious conduct, Anderson has suffered, among other things, fear, humiliation, embarrassment, mental anguish, physical injuries, and damages in an amount to be determined at trial.

112.

Defendants' tortious actions and conduct were undertaken in bad-faith.

113.

The assaults and batteries to which Anderson was subjected by Defendants entitles Anderson to all appropriate relief afforded under the law.

114.

Defendants' actions with respect to Anderson have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Anderson is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

**COUNT VII**
**NEGLIGENT RETENTION AND SUPERVISION**
**IN VIOLATION OF GEORGIA LAW**
**(Against Atlanta)**

115.

As a result of the actions taken by Defendants, Anderson suffered, among other things, assaults, batteries, discrimination based gender/race, and retaliation.

116.

Defendants owed Anderson a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory, retaliatory, and/or tortious conduct.

117.

By negligently retaining and supervising its employees, including, but not limited to, Clarke, Atlanta breached the duty to hire, retain, and supervise employees who would lawfully behave.

118.

Atlanta knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, to engage in unlawful conduct against Anderson, who repeatedly complained about and reported Clarke's tortious and unlawful conduct to Atlanta.

119.

By failing to engage in any corrective or remedial action, Atlanta ratified, condoned, and/or adopted its employees' unlawful conduct.

120.

As a direct and proximate result of Atlanta's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including, but not limited to, Clarke, Anderson suffered damages.

121.

Atlanta's negligent conduct entitles Anderson to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Anderson respectfully requests that this Court:

(1)     Grant Anderson a trial by jury as to all triable issues of fact;

(2)     Grant declaratory judgment that Anderson's rights under the Title VII, First and Fourteenth Amendments to the U.S. Constitution, and Section 1983 were violated;

(3)     Grant an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

(4)     Award compensatory damages in an amount to be determined by a jury;

(5)     Award appropriate back pay, front pay or reinstatement, unpaid wages, placement, and compensation for other damages in amounts shown at trial;

(6)     Award prejudgment interest on any award of back pay;

(7)     Award liquidated damages;

(8)     Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to deter such conduct in the future;

(9)     Award Anderson attorneys' fees, costs, and disbursements; and

(10)    Award Anderson such further and additional relief as may be just and appropriate.

*[SIGNATURE ON THE FOLLOWING PAGE]*

Respectfully submitted, this 9th day of February, 2022.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Michelle L. Anderson*

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MICHELLE L. ANDERSON, | |
| Plaintiff, | |
| vs. | Civ. Action No. _____ |
| CITY OF ATLANTA, GEORGIA, and WELLINGTON CLARKE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned certifies that this document has been prepared with a font and point selections approved by the Court in Local Rule 5.1(B) and that the foregoing **Complaint for Damages** has been filed with the Clerk using the CM/ECF system which will notify to the attorney(s) of record.

Respectfully submitted, this 9th day of February, 2022.

MOLDEN & ASSOCIATES

_____
T. ORLANDO PEARSON
Georgia Bar No. 180406